Phillip A. Silvestri, Esq.
Nevada Bar No. 11276
Greenspoon Marder LLP
3993 Howard Hughes Pkwy., Ste. 400
Las Vegas, Nevada 89169
Tel: (702) 978-4249
Fax: (954) 333-4256
phillip.silvestri@gmlaw.com

Paul D. Turner, Esq. (Florida Bar No. 121690)
*Pro Hac Vice Application to be Submitted*
Benjamin L. Reiss, Esq. (Florida Bar No. 121690)
*Pro Hac Vice Application to be Submitted*
Nima Tahmassebi, Esq. (Florida Bar No. 121690)
*Pro Hac Vice Application to be Submitted*
PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, PL
200 South Andrews Avenue, Suite 600
Fort Lauderdale, Florida 33301
T: 954-566-7117 / F: 954-566-7115
pturner@pbyalaw.com
breiss@pbyalaw.com
ntahmassebi@pbyalaw.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SOLACE ENTERPRISES, LLLP, d/b/a ÆTHER GARDENS, a Nevada limited liability limited partnership, <br><br> Plaintiff, <br><br> vs. <br><br> CASE MANDEL, an individual, TRINIDAD CONSULTING, LLC, a California limited liability company, and TRINIDAD MANAGEMENT, LLC f/d/b/a CANNADIPS, LLC, a California limited liability company, <br><br> Defendants. | Case No. <br><br> **COMPLAINT** <br><br><br> **Jury Demand to be Filed** |

## Introduction

1. This is the day of reckoning for Case Mandel. This third of a series of lawsuits

43567072v1

against him[1] relates to Mandel inflating projections for his cannabidiol ("CBD") business by over 2,000% when compared to his actual sales in order to con Solace and its related affiliates out of well over $1.2 million through various transactions. Simply stated, Mandel made a series of blatantly false representations, including through the use of make-believe projections, to lure in Solace and its affiliates into deals Mandel never intended to fulfill. Now, with his companies and business insolvent, as they cannot pay back the money borrowed under the loans, Mandel for the first time invented a host of excuses blaming others for the failure of his con. Unfortunately for Mandel, he is out of time.

2. In May 2018, before all of these loans were executed, Solace entered into a Licensing Agreement (the "Agreement") with Mandel, Trinidad, and Trinidad Management, which at the time was known as Cannadips, LLC[2] ("Management" or "Cannadips") (Mandel, Trinidad, and Cannadips collectively, "Defendants"). A true and correct copy of the Agreement is attached hereto as Exhibit 1, and is incorporated by reference. Through the Agreement, Solace obtained an exclusive license to produce and sell Mandel's product in the State of Nevada. Under the Agreement, Defendants obligations included but were not limited to national and regional sales, marketing, advertising, and public relations. Solace and its associated parties also loaned Defendants substantial money that was partially to be used to ensure Defendants' performance under the Agreement. Defendants didn't do so, and instead used the money to fund Mandel's lifestyle. After nearly two years, Solace never received what it bargained for as a result of Defendants' failure to carry out their contractually required marketing activities.

3. In this action, Solace seeks to hold Defendants accountable for their

---

[1] The 1st lawsuit was filed on February 18, 2020 in the Eighth Judicial District Court, Clark County, Nevada, and is styled *Solace Holdings, LLLP v. Case Mandel, et al.* Case No.: A-20-810683-C, Department 16. A copy of this complaint is incorporated herein by reference and attached as **Exhibit 2**.

The 2nd lawsuit was initiated on February 21, 2020 in the Superior Court of the State of California, County of Humboldt, and is styled *Telloni Holdings Limited v. Case Mandel, et al.,* Case: No. CV2000283. A copy of this complaint is incorporated herein by reference and attached as **Exhibit 3**.

[2] Upon information and belief, Cannadips, LLC changed its name to Trinidad Management, LLC at or around April 2019.

43567072v1

misrepresentations and performance (or lack thereof) related to the Agreement, through causes of action for fraud in the inducement, negligent misrepresentation, breach of contract, unjust enrichment, and violation of the Nevada Deceptive Trade Practices Act. Plaintiff seeks damages, and alleges as follows:

## The Parties

4. Plaintiff Solace Enterprises is a Nevada limited liability limited partnership that maintains its principal place of business in Las Vegas, Nevada, and carries out its core executive and administrative functions in Clark County, Nevada.

5. Solace's partners are Solace Holdings General Partner, LLC ("General") and Solace Holdings, LLLP ("Holdings").

6. General and Holdings' members are LSP Global Ltd. ("LSP"), a United Kingdom private limited company, and PMC Investments Limited ("PMC"), a Nevada limited liability company.

7. LSP maintains a principal place of business in London, England.

8. The sole member of PMC is Felipe Maclean.

9. Felipe Maclean is a citizen of Florida and resides in Florida.

10. Upon information and belief, Defendant Mandel is a resident of Humboldt County, California. Mandel is the principal of the other Defendants, and is named in his personal capacity as Mandel's actions, as described herein, evidence that Mandel was acting for his own personal gain.

11. Upon information and belief, Defendant Trinidad is a California limited liability company that maintains or has maintained a principal place of business in Humboldt County, California.

12. Upon information and belief, Defendant Trinidad's members reside in California.

13. Upon information and belief, Defendant Cannadips is a California limited liability company that maintains or has maintained a principal place of business in Humboldt County, California.

14. Upon information and belief, Defendant Cannadips' members reside in

43567072v1

California.

**Jurisdiction and Venue**

15. This Court has personal jurisdiction over Trinidad and Cannadips as they expressly consented to such jurisdiction in the Agreement. *See* **Exhibit 1** at p. 19 ¶ 9.07. Further, this court has personal jurisdiction over Mandel as a substantial part of the events giving rise to the claim against him occurred in this jurisdiction.

16. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332, as the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and there is complete diversity of citizenship.

17. Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events establishing the claims occurred here, and Defendants expressly consented to such venue in the Agreement. *See id.*

18. All conditions precedent to the initiation of this claim have been performed, waived, or otherwise satisfied.

19. Solace has retained Greenspoon Marder LLP and Perlman, Bajandas, Yevoli & Albright, P.L. (pro *hac vice* applications will be forthcoming) to enforce its rights under the Agreement and prosecute this action and, under the Agreement, is entitled to costs associated with enforcing this action, including without limitation, all reasonable attorneys' fees, costs, and expenses.

**General Allegations**

20. In May 2018, Solace and Defendants entered into the Agreement where Solace obtained an exclusive license to produce and sell Mandel's product in the State of Nevada. To induce Solace to enter the Agreement, Mandel represented that his business model was sound and would be successful as set forth in the various projections he provided to Solace. In fact, on July 20, 2017, Mandel provided Solace with over-inflated projections regarding his CBD[3]

---

[3] CBD or cannabidiol is a substance decorived directly from hemp plants that contains less than 0.3% THC. While CBD is a component of marijuana, by itself, it does not cause a "high." *See* Peter Grinspoon, MD, *Cannabidiol (CBD) - What We Know and What We Don't*,

GREENSPOON MARDER LLP
3993 Howard Hughes Parkway, Suite 400
Las Vegas, Nevada 89169
Tel: (702) 978-4249 Fax: (954) 333-4256

business' margins, costs of goods sold, production output of his produce, and gross profit. Not long thereafter, on February 17, 2018, Mandel provided Solace with projections for his business that grossly overstated its projected revenue and profits.

21. On July 20, 2017, Mandel e-mailed employees of Solace a PowerPoint presentation about investing with Cannadips where Mandel represented that margins on his CBD product would be as high as 70-76%; cost of goods sold would be $1.91-$2.25 per tin of product; an average of 17,680 tins of product would be produced daily; and an average of $150,000.00 of gross profit would be made daily.

22. These numbers were completely false and Mandel only presented them to induce Solace to enter the Agreement.

23. In reality, at this time margins on his product were approximately 32%; cost of goods sold was $3.58 per tin of product sold; an average of approximately 4,000 tins of product were produced daily; and gross profits were closer to approximately $8,400 per day.

24. On February 17, 2018, Mandel e-mailed employees of Solace a spreadsheet of Cannadips' projected sales that over inflated its actual sales figures by over 2,000% in order to ultimately induce Solace to enter into the Agreement. These misrepresentations and false promises are described above and are referred to in this claim as the "Material Misrepresentations."

25. There was no reasonable factual basis to support the Misrepresentations and Omissions. Yet, Mandel concealed from Solace that his projections were not supportable and based upon assumptions that were nothing more than wild guesses, while he presented them to Solace as reliable and based on good-faith and sound assumptions.

26. As Mandel intended, Solace relied on the Misrepresentations and Omissions, and entered into the Agreement. Upon execution of the Agreement, Solace obtained an exclusive

---

https://bit.ly/2SseGus (March 4, 9:00 a.m.). On 12/20/18, the US passed the Agriculture Improvement Act of 2018, Pub. L. 115-334, (the "2018 Farm Bill"), which removed hemp from the Controlled Substances Act, which, in turn, legalized CBD under federal law. *See* FDA, *Regulation of Cannabis and Cannabis-derived Products: Q&A Office Commissioner*, https://bit.ly/2OVN5zk (March 4, 2020, 9:00 AM).

43567072v1

GREENSPOON MARDER LLP
3993 Howard Hughes Parkway, Suite 400
Las Vegas, Nevada 89169
Tel: (702) 978-4249 Fax: (954) 333-4256

license to use Defendants' intellectual property to produce and sell Defendants' CBD product in the State of Nevada. For its part, Defendants would be responsible for matters related to the product including but not limited to national and regional sales, marketing, advertising, and public relations. *See id.* at p. 4 ¶ 2.04.

27. Not long after the Agreement was executed, in July 2018, Mandel approached Solace's affiliate Telloni for a loan. To effectuate this loan, a Convertible Loan Agreement was executed whereby Telloni funded Mandel's CBD business with $500,000. Subsequently, that same year, this loan was increased to $1,000,000 (the "Primary Loan") and memorialized in an Amended and Restated Convertible Loan Agreement (the "Amended Note"). A true and correct copy of the Amended Note is attached hereto as **Exhibit 4**.

28. Under the Amended Note, Mandel's business received $1,000,000.

29. Then, a year later in or around July 2019, following Defendants execution of the Amended Note, Mandel once again made a plea to Solace's affiliate Telloni for another loan. This time, Mandel claimed a need to fund his business' marketing expenses.

30. Under the Agreement, marketing expenses were to be paid solely by Defendants. *See* **Exhibit 1** at p. 9 ¶ 5.01(a).

31. Solace's affiliate Holdings agreed to provide Trinidad with a new bridge loan for $200,000 (the "Bridge Loan"). Attached hereto as **Exhibit 5** is a true and correct copy of the Bridge Loan, which is incorporated by reference herein.

32. Upon information and belief, Mandel used a portion of the loan funds advanced for his personal benefit and to fund his lifestyle choices.

33. All borrowed funds under the Bridge Loan, together with all accrued and unpaid interest, became due and owing on October 8, 2019.

34. However, Trinidad defaulted and did not pay off the Bridge Loan when it matured. To date, Trinidad has refused to satisfy this debt.

35. Now, Mandel's companies are in default under the promissory note memorializing the Bridge Loan. Further, under the Amended Note, if Defendants become insolvent or generally fail to pay their debts as they become due—as Trinidad has done with the

1 Bridge Loan—they will be in default under the Amended Note. *See* **Exhibit 1** at p. 11 ¶ 2(d).

2   36. Thus, Mandel's companies are also in default under the promissory note
3 memorializing the Amended Note.

4   37. Once the Bridge Loan became due and owing, Solace and its affiliates attempted
5 to renegotiate the terms of the Bridge Loan in order to provide Mandel and his companies with
6 more time to pay back what they owed under this promissory note. Mandel rejected this good
7 faith proposal because, upon information and belief, he knew he did not have the ability to repay
8 the money that he owed.

9   38. Mandel's failure to pay back the money he borrowed to pay his marketing
10 expenses is not only a breach of the Bridge Loan, but also a breach of Defendants' obligation to
11 pay marketing costs under the Agreement. *See* **Exhibit 1** at p. 9 ¶ 5.01(a). Thus, Defendants are
12 in breach of the Agreement.

13   39. Desperate in the face of his debts, on November 19, 2019, Mandel e-mailed
14 Solace explaining for the first time Defendants' position that somehow Solace breached the
15 Agreement. Mandel's assertions were patently false and a vain attempt to try and escape the
16 financial hole he dug himself in.

17   40. On February 20, 2020, Defendants' attorney sent a termination letter to Solace
18 stating that Defendants were terminating the Agreement effective immediately (the "Termination
19 Letter"). Attached hereto as **Exhibit 6** is a true and correct copy of the Termination Letter, which
20 is incorporated by reference herein.

21   41. However, Defendants' termination of the Agreement was improper because
22 Defendants still owe Solace, at a minimum, a return of all capital expenditures provided by
23 Solace Enterprises plus $1,000,000 in order to terminate the Agreement. *See* **Exhibit 1** at p. 11 ¶
24 6.03(d)(i)(1).

25   42. As a result of Defendants' false representations in the Agreement and failure to
26 perform their contractual duties, Solace suffered damages.

27 ///
28 ///

**GREENSPOON MARDER LLP**
3993 Howard Hughes Parkway, Suite 400
Las Vegas, Nevada 89169
Tel: (702) 978-4249 Fax: (954) 333-4256

43567072v1

**First Claim for Relief**

**Fraud in the Inducement**

**(Against all Defendants)**

43. Solace repeats and realleges the factual allegations contained in paragraphs 1-42 as through fully set forth herein.

44. Mandel, both individually and as a representative and/or agent of Cannadips and Trinidad, knowingly (i) made false or misleading statements of material fact to Solace, (ii) concealed and omitted material information from Solace, and (iii) made false promises of future conduct.

45. This includes but is not limited to the Material Misrepresentations set forth in paragraphs 21-24, *supra.*

46. At the time Defendants made the Material Misrepresentations they knew they were false. Defendants intended for Solace to rely and act on the misrepresentations and omissions in order to induce Solace to enter the Agreement.

47. Solace did, in fact, detrimentally rely upon these misrepresentations and omissions. The misrepresentations and omissions induced Solace (i) to enter into the Agreement; (ii) to provide capital expenditures and resources to Defendants; (iii) to defer and/or lose other business opportunities in the CBD industry, thereby delaying Solace's entry into this market, and (iv) to necessarily incur legal fees and costs and other expenses in connection with the Agreement.

48. Solace's reliance was reasonable and justified. Solace would not have entered into and funded the Agreement, increased the original amount, or have its affiliate company fund the Bridge Loan, conducted due diligence and investigation, deferred and/or lost other market opportunities, or incurred significant fees, costs and expenses, but for Defendants' misrepresentations and omissions.

49. As a direct and proximate result of the above and foregoing, Solace has suffered and will continue to suffer damages in an amount to be proven at trial with said amount being in excess of the jurisdictional limit of seventy-five thousand dollars ($75,000).

50. The conduct and actions of Defendants, and each of them, as alleged above were fraudulent, willful, wanton, intentional, oppressive, and malicious, and thereby entitle Solace to punitive damages in an amount to be proven at trial, in an amount constitutionally permissible.

### Count 2

### Negligent Misrepresentation

### (Against all Defendants)

51. Solace repeats and realleges the factual allegations contained in paragraphs 1-42 as through fully set forth herein.

52. Mandel, both individually and as a representative and/or agent of Cannadips and Trinidad, made the Material Misrepresentations set forth in paragraphs 21-24, *supra.*

53. In the exceedingly unlikely event that Mandel and Defendants did not actually know the Material Misrepresentations were false when they were made, and in fact believed these representations to be true, they had no reasonable grounds for believing the representation to be true when made.

54. Defendants intended for Solace to rely and act on the misrepresentations and omissions in order induce Solace to enter the Agreement.

55. Solace did, in fact, detrimentally rely upon these misrepresentations and omissions. The misrepresentations and omissions induced Solace (i) to enter into the Agreement; (ii) to provide capital expenditures and resources to Defendants; (iii) to defer and/or lose other business opportunities in the CBD industry, thereby delaying Solace's entry into this market, and (iv) to necessarily incur legal fees and costs and other expenses in connection with the Agreement.

56. Solace's reliance was reasonable and justified. Solace would not have entered into the Agreement, increased the original amount, deferred and/or lost other market opportunities, or incurred significant fees, costs and expenses, but for Defendants' misrepresentations and omissions.

57. As a direct and proximate result of the above and foregoing, Solace has suffered and will continue to suffer damages in an amount to be proven at trial with said amount being in

43567072v1

excess of the jurisdictional limit of seventy-five thousand dollars ($75,000).

## Count 3

### Breach of Contract (the Agreement)

### (Against Trinidad and Cannadips)

58. Solace repeats and realleges the factual allegations contained in paragraphs 1-42 as through fully set forth herein .

59. Trinidad and Cannadips materially defaulted under the terms of the Agreement as alleged above, by failing to make the required payment of principal and interest due on Trinidad's Bridge Loan with Solace on October 8, 2019, or at any time thereafter.

60. This, in turn, put Trinidad and Cannadips in default under the Amended Note, which means that all amounts (including principal and interest) under the Amended Note are past due and owing. *See* **Exhibit 3** at p. 11 ¶ 2(d).

61. Further, Trinidad's failure to repay the Bridge Loan constitutes a breach of the Agreement, as the funds for the Bridge Loan were provided to fund Trinidad and Cannadips' marketing expenses – a cost that was to be paid exclusively by Trinidad and Cannadips' under the Agreement. *See* **Exhibit 1** at p. 9 ¶ 5.01(a).

62. Subsequently, following Trinidad and Cannadips' breach of the Agreement, Defendants' attorney sent Solace a Termination Letter. *See* **Exhibit 6**.

63. Trinidad and Cannadips' termination of the Agreement was improper because Trinidad and Cannadips still owe Solace, at a minimum, a return of all capital expenditures provided by Solace plus $1,000,000.00 in order to terminate the Agreement. *See* **Exhibit 1** at p. 11 ¶ 6.03(d)(i)(1).

64. To date, no $1,000,000 payment, or capital expenditures have been received by Solace. Trinidad and Cannadips have also failed to pay any amounts due and owing on both the Primary Loan and the Bridge Loan.

65. As a result of the above and foregoing, Trinidad and Cannadips are in an unremedied breach of the terms and conditions of the Agreement.

66. As a direct and proximate result of the above and foregoing, Solace has suffered

43567072v1

and will continue to suffer damages in an amount to be proven at trial with said amount being in excess of the jurisdictional limit of seventy-five thousand dollars ($75,000).

## Count 4

## Unjust Enrichment

### (Against Trinidad and Cannadips)

67. Solace repeats and realleges the factual allegations contained in paragraphs 1-42 as through fully set forth herein.

68. Trinidad and Cannadips set into motion a series of events that induced Solace into entering into the Agreement as described herein.

69. Solace conferred a benefit upon Trinidad and Cannadips by providing Trinidad and Cannadips with specific capital expenditures identified in the Agreement. *See* **Exhibit 1** at p. 31.

70. Trinidad and Cannadips have appreciated the benefit and have accepted and retained the capital expenditures provided by Solace.

71. Trinidad and Cannadips had actual knowledge that the capital expenditures provided by Solace were not a gift and that Solace expected return of the capital expenditures upon the conclusion of the Agreement.

72. Retention by Trinidad and Cannadips of the capital expenditures received from Solace under the circumstances described above would be inequitable and unjust.

73. Thus, Trinidad and Cannadips have been unjustly enriched by failing to repay the capital expenditures provided by Solace.

74. As a direct and proximate result of the above and foregoing, Solace has suffered and will continue to suffer damages in an amount to be proven at trial with said amount being in excess of the jurisdictional limit of seventy-five thousand dollars ($75,000).

## **Prayer for Relief**

**WHEREFORE,** Plaintiff requests this Court enter judgment:

1. in favor of Plaintiff against Defendants on all counts;

2. awarding Plaintiff actual and compensatory damages in an amount to be proven at

**GREENSPOON MARDER LLP**
3993 Howard Hughes Parkway, Suite 400
Las Vegas, Nevada 89169
Tel: (702) 978-4249 Fax: (954) 333-4256

trial;

3. awarding Plaintiff punitive and exemplary damages, according to proof at trial, in an amount constitutionally permissible;

5. awarding Plaintiff attorneys' fees;

6. awarding Plaintiff costs of suit incurred herein; and

7. such other and further relief as the Court deems just and proper.

Dated this 4th day of March, 2020.

GREENSPOON MARDER LLP

*/s/ Phillip A. Silvestri, Esq.*
Phillip A. Silvestri, Esq.
Nevada Bar No. 11276

PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, PL

*/s/ Paul D. Turner, Esq.*
Paul D. Turner, Esq. (Florida Bar No. 121690)
*Pro Hac Vice Application to be Submitted*
Benjamin L. Reiss, Esq. (Florida Bar No. 121690)
*Pro Hac Vice Application to be Submitted*
Nima Tahmassebi, Esq. (Florida Bar No. 121690)
*Pro Hac Vice Application to be Submitted*

*Attorneys for Plaintiff*

43567072v1